UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  09-20075-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MICHAEL FRANK,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO SUPPRESS

This matter arose upon the Defendant's Motion to Suppress evidence seized pursuant to a search warrant on the grounds that the Affidavit supporting the warrant failed to establish probable cause (DE # 29).  The Honorable Ursula Ungaro, United States District Judge, has referred this matter to the undersigned United States Magistrate Judge (DE # 30).  The government has responded in opposition (DE # 34), and an oral argument on the Motion was held on June 15, 2009.  At the conclusion of the hearing, the undersigned announced from the bench her conclusion that the Affidavit established probable cause to believe that evidence of child pornography would be found during the search of the Defendant's residence, and therefore she would recommend that the motion be denied.  This Report and Recommendation incorporates the undersigned's rulings made at the oral argument, as well as the undersigned's conclusions based upon the Parties' submissions and the totality of the circumstances in this case.  For the reasons stated below, the undersigned respectfully recommends that the Motion to Suppress be DENIED.

I.      **BACKGROUND**

Defendant Michael Frank is charged in a two count Indictment with attempting to transfer obscene matter to another individual who had not attained the age of 16 years, in violation of 18 U.S.C. §1470 (Count 1); and, with knowingly transporting a visual depiction involving a minor engaged in sexually explicit conduct through a computer, in violation of 18 U.S.C. § 2252(a)(1) (Count 2) (DE # 3).  The Indictment also seeks forfeiture of the computer and computer equipment seized from the Defendant's residence pursuant to the search warrant challenged in the present motion, pursuant to 18 U.S.C. § 1467(a)(1)-(3) (DE # 3 at 3).

The events which form the basis for these charges occurred, respectively, on July 20, 2008, and July 28, 2008, in a Yahoo chat room where the Defendant was communicating with an undercover law enforcement agent who was pretending to be a single mother with a 10-year-old daughter (DE # 1, Criminal Complaint).  Based upon those conversations and the transmission of certain images of alleged child pornography, on January 5, 2009, a Criminal Complaint and arrest warrant were issued in this District which charged the Defendant with distribution of child pornography (DE ## 1, 2).

In addition, on January 6, 2009, a search warrant was issued by a United States Magistrate Judge in the Western District of New York, which authorized the search of the Defendant's residence for images of child pornography and files containing such images, including on computers and related devices; as well as information and records which would evidence the ownership or use of computer equipment found in the residence (DE # 29-2).

As a result of the search, law enforcement officers seized the Defendant's

2

computer, which contained various images that the government seeks to introduce into evidence at the trial in this case.  Those images included the images which had been transmitted during the above communications with the undercover law enforcement officer, as well as numerous other images.

II.    **THE MOTION TO SUPPRESS**

A.  **The Positions of the Parties**

On May 26, 2009, Defendant filed a Motion to Suppress seeking to suppress all evidence seized from his home computer pursuant to the above search warrant (DE # 29).  In that Motion, Defendant asserted that the search and seizure violated his Fourth Amendment rights because the affidavit submitted in support of the warrant application contained stale information that had been gathered by a Special Agent of the Department of Homeland Security approximately five months before the search warrant application was submitted.  Specifically, the Defendant contended that because of the delay that occurred between the time that the Defendant allegedly transmitted the child pornography and the date of the warrant, there was no longer probable cause to believe that evidence of child pornography, or of his transmission of child pornography, would be found at his residence (DE # 29).[1]  The Defendant reiterated these arguments at the oral argument, emphasizing that the information contained in the Affidavit was stale and failed to include any statements or allegations regarding the Defendant's conduct close to the time when the application for search warrant was made.  The Defendant asserted that there were no statements made in the Affidavit that indicated that there was ongoing

---

[1] The Defendant has not asserted that if a search warrant had been issued shortly after the information in the Affidavit had been collected that there would have been no probable cause; rather, the Defendant only challenges the "staleness" of the information in the Affidavit used to secure a search warrant.

criminal activity at the time the search warrant application was made.  In addition, the Defendant argued that there was no language in the Affidavit in this case, unlike in many other child pornography cases, that suggested that people who transmitted or obtained pornographic images generally were likely to retain such images for any significant length of time.  The Defendant further argued that there was no probability that the Defendant specifically was still in possession of the computer to be searched or that the images at issue were still located on the computer.  The Defendant argued that, on the contrary, people frequently buy new computers and thus it was unlikely that the Defendant still possessed the same computer from which the images were transmitted.

In its Opposition to the Motion, the Government argued that the information contained in the affidavit was not stale at the time of the search warrant application and thus, probable cause existed at the time that the search warrant was issued (DE # 34). The Government asserted that there is no definitive time line for determining whether the information in an affidavit is stale, and argued that the court should examine a number of factors, including the nature of the suspected crime, in assessing whether probable cause existed at the time a warrant is issued.  The Government further contended that in this case, all of the relevant factors weighed in favor of finding that fresh probable cause existed (DE # 34).  During the oral argument, the Government emphasized that, based upon the nature of the child pornography offense under investigation, including the Defendant's multiple online chats, his sexual activity on a web cam, and the electronic transmission of pornographic images of children between July 20-28, 2009; combined with the fact that even deleted files remain on a computer; and, the confirmation of the Defendant's identity and continued residence at the subject premises, the Affidavit established probable cause to believe that the premises to be searched, including a

4

computer located therein, would contain evidence of child pornography. [2]  To support its argument, the Government cited a number of cases where courts found probable cause in a delayed search warrant setting in child pornography cases, based largely on the premise that child pornographers tend to retain images of pornographic images for long periods of time.[3]

In the alternative, relying on *United States v. Leon*, 468 U.S. 897 (1984), the Government contended that the agents executing the search warrant relied upon it in good faith, and therefore suppression of the evidence was not warranted. Both parties requested an evidentiary hearing on the issue of good faith, in the event that the Court found the warrant lacked probable cause.  However, the government suggested that no such hearing be held if the Court upheld the warrant, since the agent who would be needed for testimony at the hearing was located in upstate New York, where the warrant was issued.  Based upon the determination that the information contained in the Affidavit was not stale, and that the Affidavit therefore established probable cause to support the search, it is unnecessary to reach the issue of good faith, and therefore the undersigned did not hold an evidentiary hearing.  Thus, the issue of good faith reliance

---

[2] At the oral argument, both parties referred to materials that were not contained in the Affidavit or search warrant in support of their respective positions.  However, both parties agreed that the undersigned's determination of whether probable cause existed at the time that the search warrant was issued was limited to the four corners of the search warrant and accompanying Affidavit, and thus other materials could not be considered unless the undersigned reached the issue of the good faith exception to probable cause. *United States v. Martin*, 297 F. 3d 1308, 1318-19 (11th Cir. 2002). Accordingly, for purposes of the immediate analysis, the undersigned has only taken into consideration statements and information contained in the Affidavit, the attachments thereto, and the search warrant.

[3] Government's Response to Defendant's Motion to Suppress Evidence, DE # 34 at 9-10.

on the validity of the search warrant is not addressed further in this Report and Recommendation.

      B.    <u>The Affidavit</u>

      In the Affidavit at issue, the Affiant, Special Agent Christopher Bennett, described the activity which led to the application for a search warrant as follows (DE # 29-2).

      On July 20, 2008, an undercover law enforcement officer ("UCO") targeting child predators entered a Yahoo chat room entitled "Fetishes:14," which, based upon his experience, catered to persons interested in incest.  The UCO's undercover persona was that of a single mother with a 10-year-old daughter.  A person in the chat room who identified himself as "mikefriendly2002" began communicating with the UCO via an online instant messaging program which permitted a real time written conversation.  During the conversation, "mikefriendly2002" indicated that he was interested in masturbating on a webcam for the mother and her daughter (DE # 29-2 at ¶ 30).

      The Yahoo profile for "mikefriendly2002" contained information that he had provided about himself.  It stated that the user's first name was "Mike," that he lived in the Buffalo area, and contained a picture of his face.  The UCO saved this picture (DE # 29-2 at ¶ 31).

      Later on July 20, 2008, "mikefriendly 2002" began a second conversation with the UCO.  During that instant messaging conversation "mikefriendly2002" asked to speak directly to the UCO's 10-year-old daughter, and during this purported conversation with the fictional daughter, he transmitted to her a webcam streaming video of himself masturbating (DE # 29-2 at ¶ 32).

      On July 28, 2008, the UCO signed into Yahoo! Messenger, but did not enter a chat room.  "Mikefriendly2002" initiated an instant messaging conversation with the UCO, in

which he asked if the daughter was around, and if he could masturbate for her again.  In addition, "mikefriendly2002" offered to share pictures and videos.  He then sent two videos and five images to the UCO.  One of the videos and two of the images depicted minors engaged in sexually explicit conduct, which is described in detail in the Affidavit (DE # 29-2 at ¶ 33).

Thereafter, at an unspecified date, law enforcement officials obtained the subscriber name and number for the screen name "mikefriendly2002" through the use of the internet protocol address and by obtaining records from the internet provider (DE # 29-2 at ¶ 34).  The officers also obtained a New York driver's license photo of Michael Frank that matched the address of the assigned subscriber, and was confirmed by the undercover officer to be the same individual who identified himself as "mikefriendly2002" (DE # 29-2 at ¶ 36).  On January 5-6, 2009, law enforcement officers confirmed that Michael Frank still resided at the subject premises by performing checks with the New York Division of Motor Vehicles, the New York State Electric and Gas utility company,[4] and the United States Postal Service, which verified that Michael Frank was receiving mail at that location (DE # 29-2 at ¶¶ 37-39).

The Affidavit also set forth in detail the process for searching computers for criminal activity, as well as the Affiant's experience in conducting searches of computers and tracking users through computer addresses.  With respect to recovery of

---

[4] Although the date given for the check with the utilities company was January 5, 2008, it is clear, as the government stated without contradiction at the oral argument, that this was a typographical error and the correct year is 2009.  The investigation did not even begin until late July 2008, and thus the residential information would not have been gathered more than six months earlier.  The undersigned notes, however, that this paragraph could be deleted in its entirety without affecting the validity of the Affidavit, since the information is cumulative of the information obtained from the other sources.

information from computers, the Affiant specifically avers:

> 28. Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.... Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space...for long periods of time before they are overwritten.... Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

(DE # 29-2 at ¶ 28).

The Affidavit did not, however, make any specific references to the tendencies or habits or persons engaged in the transmission or retention of child pornography.

III.   **LEGAL ANALYSIS**

A.   **Framework for Analysis**

In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court set forth guidelines to be used in determining whether an affidavit establishes probable cause to believe that evidence or fruits of a crime will be found at the specified location. After first noting that "a magistrate's determination of probable cause should be paid great deference by reviewing courts" 462 U.S. at 236, the Court set forth the following test: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,

including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." 462 U.S. at 238-39 (citation omitted).

In order to satisfy the probable cause standard, the government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues." *United States v. Domme*, 753 F.2d 950, 953 (11th Cir.1985).  Thus, in determining whether there is a fair probability that contraband or evidence will be found at a particular location, the currency or staleness of the information must be considered.  As stated by the Eleventh Circuit in *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984), *abrogated on other grounds by United States v. Lewis*, 492 F.3d 1219 (11th Cir.2007):

> No mechanical test exists for determining when information becomes fatally stale; rather, "staleness is an issue which must be decided on the peculiar facts of each case." *Hyde*, 574 F.2d at 865; *Weinrich*, 586 F.2d at 491.
>
> In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime.  The circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time.  On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.
>
> *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir. 1973).

*Bascaro*, 742 F.2d at 1345.  In *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994), the Eleventh Circuit reiterated this principle, and stated that the factors to be considered

in making the case-by-case determination of staleness include "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched."  The Court concluded however, that "even stale information is not fatal if the government affidavit updates, substantiates, or corroborates the stale material."  *Harris*, 20 F.3d at 450.  *Accord United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir.2000).

      B.      <u>The Affidavit in the Case at Bar Provided Probable Cause to Search the Premises</u>

Based upon a careful review of the Affidavit in the case at bar, and evaluating the totality of the circumstances alleged in the Affidavit under the factors outlined above, the undersigned concludes that the information contained in the Affidavit submitted in support of the search warrant was not stale; and thus, at the time the search warrant was issued, there was probable cause to believe that evidence the Defendant committed the offense of child pornography would be found at his premises, including images of child pornography in his computer system.

At the outset, the Court notes that the last online conversation between the Defendant and the undercover officer occurred on July 28, 2008 and the search warrant was not obtained until January 6, 2009–slightly more than five months later.  However, as noted above, there is no bright line rule which establishes when information becomes fatally stale, and in this context, the passage of approximately five months between the alleged criminal activity and application for the search warrant was not exceedingly long.  Further, the alleged offense involved the transmission of videos and/or photographs via a computer.  Common sense suggests that people who obtain and/or

share photographs online, whether related to child pornography or not, are likely to retain those photographs for future viewing.[5]  Moreover, as stated in the Affidavit, "computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet;" and, "[w]hen a person 'deletes' a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space...for long periods of time before they are overwritten." (DE #29-2, pg. 15, ¶ 28).  Thus, given that it is undisputed that the Defendant allegedly transmitted video and picture images from his home computer at the end of July 2008, there was at least the required "fair probability" that those items or remnants of those items were capable of being retrieved from that same computer in January 2009, less than six months later, even if the Defendant had attempted to delete the files.  In addition, the attachment to the Affidavit which identified the items to be seized specifically referred to items that evidenced ownership of computer equipment and internet access.  This information, which is relevant to prove who owned the computer and/or who had access to the computer, constitutes evidence regarding the identity of the person who committed the offense under investigation.

Similarly, although the Defendant argues that there is a possibility that Mr. Frank purchased a new computer in the intervening months, based upon a common-sense evaluation of the nature of computers, there is at least a "fair probability" that the same

---

[5] The undersigned notes that with respect to the offense of child pornography, numerous cases recite expert opinions and the experience of law enforcement agents that persons who collect child pornography are likely to retain those images.  This is discussed further *infra.*

computer used by Defendant Frank at the end of July 2008 remained at his residence on

January 8, 2009.  Therefore, the character of the item sought, i.e., a home computer

containing evidence of child pornography offenses committed by the Defendant, weighs

in favor of finding that probable cause existed at the time the warrant was obtained.

Thus, there was probable cause to believe that the items which the search

warrant authorized to be seized, including the computer, would be found at the

residence to be searched.

The undersigned reaches the above conclusion without considering the

government's contention that, even in the absence of a specific averment in the Affidavit

regarding the general propensity of persons who collect child pornography to keep such

images, the issuing Magistrate Judge could draw this inference based upon the

established caselaw and common sense.[6]  However, the undersigned notes that the

cases cited by the government regarding searches conducted in child pornography

---

[6] At oral argument, defense counsel argued that this omission was significant and that the Court could not draw that inference, pointing out that online chat conversations between the UCO and the Defendant, which were not included in the Affidavit, contain statements by the Defendant that he deleted most of his images from his computer since he did not want his family to find them.  The undersigned has not considered matters outside the Affidavit in reviewing the determination of probable cause; but, nevertheless has considered the more general nature of the Defendant's argument, which is that there may have been a good reason for the omission of the language regarding the general tendency of child pornographers to hoard or save these images, in that the Affiant may have determined that the general tendency was not applicable to this particular Defendant.

As stated above, however, since this case involves images stored on a computer, it does not matter whether the Defendant deleted the images or not; there is probable cause that the images which had been previously stored on, or transmitted through, the computer could be forensically recovered.

Moreover, the numerous cases regarding child pornography establish that persons who obtain sexual gratification will continue to collect and view images; thus, even assuming deletions or a change in computers, there is a fair probability that a person who enters a chat room on multiple occasions during a one-week snapshot of activity for the purpose of engaging in this behavior will continue to possess such items.

investigations provide additional support for the conclusion that there was a reasonable

probability such images would be found on the Defendant's computer.  Various courts

that have found the existence of probable cause despite the delay in obtaining a search

warrant.  As stated by the Court in *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir.

2005):

> Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned.  *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it); *United States v. Ricciardelli*, 998 F.2d 8, 12 n.4 (1st Cir. 1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); *United States v. Rabe*, 848 F.2d 994, 996 (9th Cir. 1988) (upholding warrant despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant).
>
> In this case, although the affidavit before the judge did not explain specifically that collectors of child pornography tend to hold onto their stash for long periods of time, it was clear from the context that the police believed that Newsom probably still had the year-old images or something similar on his computer.

*See also United States v. Prideaux-Wentz*, 543 F. 3d 954 (7th Cir. 2008) (declining to find

that in child pornography case evidence that is two to four years old is stale as a matter

of law); *United States v. Irving*, 452 F.3d 110, 125 (2d Cir.2006) (holding child

pornography activity two years old not stale); *United States v. Riccardi*, 405 F.3d 852,

860-61 (10th Cir.2005) (holding same for five years); *United States v. Peden*, 891 F.2d 514,

518-19 (5th Cir.1989) (finding that a warrant based on a two-year-old delivery from suspected child pornographers and an eight-year-old conviction for solicitation of a minor was not stale).

At the hearing, the Defendant made much of the fact that in this case, the Affidavit of the Agent did not specifically state that collectors of child pornography tend to keep pornography for long periods of time, and thus failed to provide the grounds to establish probable cause that is found in many other child pornography cases. However, the absence of that language in an affidavit does not, in and of itself, render the information in the affidavit stale. As stated above by the Court in *United States v. Newsom*, 402 F.3d 780 (7th Cir. 2005), although an affidavit before a judge did not explain specifically that collectors of child pornography tend to hold onto the pornography, where it was clear from the context that the police believed that the defendant probably still had year-old images or "something similar on his computer," probable cause was established. *Id.* at 783. In the case at bar, like *Newsom*, the Defendant's activity during the one-week snapshot in July of 2008 recounted in the Affidavit–which included engaging in multiple on-line chats, providing webcam streaming of sexual acts to be viewed by a minor, and forwarding one video and two images depicting minors engaged in sexually explicit conduct to the undercover officer– supports a conclusion that the Defendant's alleged criminal activities were not isolated but were protracted and continuous and thus those items and/or things similar to those items likely remained on the Defendant's computer in his residence.

In contesting probable cause, the Defendant has placed heavy reliance on *United States v. Zimmerman*, 277 F.3d 426 (3rd Cir. 2002). However, the facts in *Zimmerman* are distinguishable from the case at bar. There, the affidavit prepared to support the

14

issuance of a search warrant for child pornography did not contain any information regarding the possession of child pornography; rather, the Affiant was aware only of one video clip of adult bestiality six months prior to the issuance of the search warrant, as well as allegations concerning sexual contact and viewing adult pornography with high school students who attended the school where the defendant was a teacher. This was held insufficient to support the issuance of a warrant to search for child pornography on the defendant's computer.  Thus, unlike this case, there were no online chats with an undercover officer regarding sexual acts with a minor, no transmission of child pornography images, and no reference to child pornography in the affidavit in support of the search warrant application. Simply put, *Zimmerman* is not persuasive with respect to the issues presented in the case at bar.  *Accord*, *United States v. Toups*, 2007 WL 433562 *10-11 (M.D. Ala. Feb. 6, 2007) (distinguishing child pornography cases from *Zimmerman*).

Finally, the Defendant's reliance on the recent Eleventh Circuit case, *United States v. Mitchell*, 2009 WL 1067212 (11th Cir. 2009) is misplaced.  In *Mitchell*, the court determined that a twenty-one-day delay in obtaining a search warrant after a computer had been seized without a warrant, was unreasonable; the court did not even address the issue of staleness.  The instant case, however, does not involve delay in obtaining a warrant following a probable cause seizure, since the alleged delay in this matter was prior to the seizure of the Defendant's computer.  Thus, this case does not involve a "significant interference with the [defendant's ] possessory interest" which the court in *Mitchell* found dispositive.  *Id.* at *3.  As argued by the Government in the case at bar, the reasonableness of a delay in securing a warrant to search a previously seized computer is irrelevant to the issue of staleness.

15

IV.  **CONCLUSION**

In sum, the undersigned concludes that the information contained in the Affidavit used in support of the application for a search warrant was not stale at the time that the warrant was issued; and, the Affidavit therefore established probable cause to believe that the evidence and contraband listed in the warrant would be found at the Defendant's residence.  The undersigned reaches this conclusion based upon an independent evaluation of the information contained in the Affidavit; *a fortiorari*, when the great deference required by *Illinois v. Gates, supra.,* is paid to the determination made by the issuing Magistrate Judge, there was a substantial basis for the issuing Magistrate Judge to find that probable cause existed, and the issuance of the search warrant was constitutionally permissible.[7]

Therefore, based upon a review of the record as a whole, including the parties' submissions and the oral arguments made by the Parties, it is hereby

**RECOMMENDED** that the Motion to Suppress (DE # 29) be **DENIED**.

The parties will have ten days from the date of service of this Order within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d

---

[7] At the hearing, defense counsel argued that even if there was probable cause to believe that there would be evidence regarding the images transmitted, there was not probable cause to believe that other images of child pornography would be found, and therefore the warrant was overbroad.  This argument was never raised in the Motion to Suppress, and the undersigned declined to consider it at the hearing.  However, the undersigned notes that the argument that the search should have been restricted to only the images transmitted to the UCO appears to be wholly without merit based upon the ready availability of such images for transmission during the on-line chat conversation, and the deference which must be paid to the issuing Magistrate Judge.

16

745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** in chambers in Miami, Florida, on June 26, 2009.


                                    ANDREA M. SIMONTON
                                    UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
**The Honorable Ursula Ungaro, United States District Judge**
**All counsel of record via CM/ECF**

17